Mr. Solomon, please proceed. Good morning, and may it please the Court. So this case involves a security clearance determination, but where we kind of differentiate from the opinion of the lower board is that we are advocating for consideration of determinations that are tangential and not directly related to the security clearance determination. And we don't believe that the initial decision of the board made that distinction and said look at this entire challenge as an attack to a security clearance determination based on that precluded jurisdiction in this action. Mr. Solomon, before you begin with your line, can I just ask you a quick clarification? Yes. Because a lot, like a great deal of your, or some of your argument at least, deals with this proposed suspension. And I just wondered whether, why this appeal brought when it was before, this appeal, as I understand it, was brought before there was actually any suspension or final written decision on the suspension. So while you talk about the suspension in your brief, the appeal, as I understand it, only deals with the proposed suspension. Is that correct? That is correct. So this is actually a suspension that was proposed in February 26th of 2019, and then Ms. Knapp wasn't actually removed from the Federal Service until 2020. The proposed indefinite suspension was... Excuse me, this is Judge Probst. The operative facts that we can consider in the record in this case are only the proposed suspension and not what happened after that, correct? Correct. Yes. What the focus is on is in the interim. The proposed indefinite suspension actually does two things. Not only does it propose to suspend Ms. Knapp, but it also places her... That's part of the clarification here. The other thing... This is Judge Klobuchar. You say that's a proposed adverse action. Is it the actual putting in no-pay statutes or the proposal? What my question is, is a proposal to suspend from duty and pay an adverse action for board jurisdiction purposes? It is the threat of a personnel action, which is something that the board has jurisdiction over. In addition to that, as part of the indefinite suspension, they significantly changed her job duties by completely taking them away. She remained without duties from that period all the way until she was ultimately... The proposal was revoked. The proposed removal was issued and she was removed. During that entire time, she was not performing any job duties and she was not staying current on her position, which obviously further damaged her resume and things along those lines. Basically, what we're looking at here is the decision to actually issue the proposed indefinite suspension wasn't directly actually related to the initial security clearance determination. You can actually piece together from the initial memorandum, which she didn't have at the time but was later declassified, as well as later determinations on the initial inquiry, that it wasn't something that was directly related to the actual security clearance determination. Instead, this was proposed after special considerations of aggravating facts that we believe were actually determined in a retaliatory fashion. Going back to essentially the facts of this case, which is necessary to recap, even though we can't attack the actual security clearance determination... Sorry, Mr. Solomon, I'm a little confused. Maybe I'm misunderstanding what you're saying, but am I right? We're looking at Appendix 127-128, which is the proposed suspension letter. I thought it says this proposal is based on your inability to maintain access to classified information requiring a security clearance due to local suspension of your access, which is the condition of employment for your position. That's correct, right? That is correct. ...resulting from the inability to access the classified information, right? That is correct. However, what we're looking at, too, is reassignment as a possibility and how that was avoided. But backing up for a second and just briefly going into the facts, basically at issue here was Ms. Knapp is a victim advocate for victims of rape and sexual assault in the Army. There was an arrest in 2016 of Mr. Christopher Lea. Mr. Solomon, I guess the time is short, so can I just follow up on the argument you were making before, which is on the 7513, and I'm just still trying to understand it. You said the board should have considered whether you got the procedural protections of 7513 in connection with the suspension, the proposed suspension. We're not looking at the suspension. And I'm not seeing in these two pages, the second page, 128, outlines all of the rights she has to respond and notice and so forth. So what was missing in the proposal that she didn't, what notice or more should she have gotten in the proposed suspension that doesn't appear on page 128? Well, there's a couple things, and it's things that are directly in the proposal and things that were outside of the process that are directly related that aren't afforded. But basically, they refused to actually make any sort of determination on the response. And then also, without making any sort of determination, they actually at one point withheld pay beginning in March without any actual decision on the suspension. And they later ended up paying that back after it was determined they didn't have the authority to do that, but she was still without pay for that period. But also, the actual underlying security clearance determination was based on information that was very clearly publicly available. So Ms. Knapp, based on procedural rights, challenged that information is overclassified. And then the agency purposely failed to act on that challenge knowing that it was correct so that there was no actual determination that the information she shared was not actually classified. And in so doing, they prevented her from kind of validly challenging the proposed suspension action by just purposely failing to act on the challenge. And that was included in your case that you made before the board? Yes. I thought you were just-I thought the focus was on the proposed suspension. I mean, it is. Not on the decision to follow that. It is, but these are all things that kind of-it's several things that are overlaid and interact with one another, and that's kind of what I was getting to was trying to go back to the facts. But I guess skipping over that, basically the issue here is that this is all stuff that was-the Army actually disclosed a lot of this information in FOIA. And the entirety of the information was actually, you know, directly testified by a general of the United States Army to Congress in publicly available testimony. So that none of the information that was disclosed is anything that's actually classified, basically without getting into it. Well, where do you think our ability to review begins and ends on that matter? Did the board have the authority to review what it appears you're talking about now is whether or not they were right in removing or suspending her security classification? And do you think we have the right-or that stuff is reviewable by us or by the MSPB? So the board doesn't have the ability to review the revocation of the security classification. What the board does have the ability to review is whether or not the actions taken were actually necessary in light of EGAN when it's discussing other appropriate actions. So other employees who are in Ms. Mapp's same position, who are also in sensitive units, had a similar inquiry and were actually just simply transferred to a unit that doesn't have security clearance requirements and allowed to continue to do victim advocacy work. So with Ms. Mapp, initially, following the initial memorandum, she was put not in another unit as she should have been, as was done in the past. However, she was still given other duties without being put on administrative leave and asked to continue performing work. And it wasn't until later that, after the proposal and the indefinite suspension, they took it so far as that she could not continue performing those duties, which had nothing to do with classified information. But it was quite simply reprisal for the fact that she then raised these same issues with the EEO. And that's when, you know, the agency made the determination that they were going to take this from an action that, you know, she was classified into non-sensitive duty to an action where they weren't allowing her to perform any duties and also proposing an indefinite suspension, as opposed to allowing her to continue. The initial memorandum actually about the security clearance makes a recommendation only that she be retrained with no recommendation about, you know, taking her away from her initial duties. And it wasn't until separate memorandums on additional inquiry later that didn't have anything to, didn't actually make a determination about her security clearance, but laid out a bunch of facts incorrectly assuming or reading the initial security clearance memo and stating that, you know, disciplinary action was warranted and should be looked into. And it was only after that that the agency went forward on the proposed suspension. And thank you. I'd like to reserve the rest of my time for rebuttal. Okay. Thank you. Let's hear from the government. May it please the court. In EGAN, the Supreme Court stated that the protection of classified information is to be left to the broad discretion of the executive branch. This court has repeatedly reemphasized that notion since EGAN, and as recently as Conyers, stated that absent congressional action, judicial review of all national security matters is generally prohibited. Well, counsel, this is Judge Prost. I understand your position. Should we or someone be troubled? I mean, maybe it's outside of our lane because it's policy or legislation. But should we not be troubled by the fact that a person such as the appellant here seems to have virtually no recourse, even if, assuming arguendo, that the taking away of her security clearance was retaliatory? So this was actually raised by this court in Hess approximately 27 years ago. And this court looked at the legislative history of the 1994 whistleblower amendment, in which at that time Congress was considering whether employees should be given more rights to protect against the kind of concern you just raised. But ultimately, it was this court's determination, based on the legislative history and the dropping of certain provisions from the 1994 act, that national security concerns trumped employee rights concerns. And so while there might be certain employees who are deprived of certain rights they otherwise would have, this was the priority of Congress at that time and continues to be so. There's no reason you need or you should know this, but do you happen to know whether there's been any legislative effort to narrow that gap? I happen to do know. Repeatedly, there are bills introduced in Congress to overturn Egan, and I think Conyers-Northover as well, but none of those bills have clearly ever passed Congress, demonstrating that the will of Congress is still to protect national security over providing additional employee rights. Okay, I don't want to take too much of your time. Thank you for your response. So the actions the petitioner alleged directly stem here either from the agency's determination that she committed security violations regarding the protection of classified information or its decision to suspend her clearance because of those violations. And when an action arises in that manner, the board can't look at whether that action might be whistleblower reprisal because the review of those actions would require the boards ultimately review the agency's decisions regarding the protection of classified information. I understand petitioners stated that some of these actions were just tangential, but in reality, they all arose out of the same factual basis that led to the clearance suspension itself, such that reviewing any of those actions would in essence be reviewing the clearance suspension itself. And since we can't review the clearance suspension, we really can't review any of those other actions as well. Just to clarify, your brief makes clear that the word all is not correct. The one action, the change in rater you concede in your brief was not related to the security clearance. Yes, that is correct, Your Honor. There is one action that doesn't appear to be from the petitioner's documents related to the security clearance, but a change in rater has been held by the board to not by itself be a personnel action under the WPA. And so that action also falls outside of MCB jurisdiction. Do you agree that threatened suspension is a covered act? A proposed suspension under the WPA typically is a covered action, yes. It's just not a personnel action that could be covered if it arises out of a security clearance suspension. But is a proposed suspension in the category of what Egan said, there are at least procedural protections you look to whether or not were provided to the employee? Well, yes, and that's where this gets a little bit muddled because Egan arose out of Chapter 75 action. And so what Egan says is that actions proposed adverse or adverse actions coming out of Chapter 75 are still guaranteed the remainder of the rights for Chapter 75 appeals, such as the due process guarantees in 7513. But this is an IRA or an individual right of action appeal, and our inquiry in an IRA is narrow and limited to solely whether or not whistleblower reprisal occurred, which is essentially just a merits determination on the action itself. And in IRAs, the board does not have authority to look at whether those procedural protections occurred. Wait a minute. Wait a minute. Really? Is that your position that even if in connection with the whistleblower, obviously, the span of personnel actions covered by the whistleblower statute go far beyond the 7513 stuff? But if there's a, you know, a suspension or removal in connection and the allegation is whistleblowing, you don't think that Egan's, you know, statement that the procedural protections are something that is reviewable applies? Well, this is, it's actually nothing to do with Egan on this specific point. It's just what the board's inquiry is in an IRA appeal is limited to whether or not reprisal for whistleblowing occurred. So in any IRA, regardless of whether or not Egan or any national security matters apply, the board's inquiry is only going to be limited to whether or not reprisal for whistleblowing occurred. It doesn't look at whether or not Chapter 75 procedural protections were provided. But to the other part in which... Again, a given case when the government gives 7513 rights, they can't take them back. Yes. And if an actual suspension was appealed under Chapter 75, and both, I believe, Judge Prost and Judge Clevenger alluded to this in their questioning of Petitioner's Counsel. If it was appealed under Chapter 75 and it was an actual effectuated suspension, it would be entitled to due process rights, such as notice and opportunity to respond, which is what the proposed suspension actually is. The proposed suspension is part of that due process guarantee under Chapter 75. Oh, okay. That's just what I wanted you to clarify. But your view is that she got all of the procedural protections in that proposed suspension letter, which gave her the right to file a response, et cetera, et cetera, right? If she were actually suspended, and frankly, the first I've heard of her actually being suspended is this argument in which Petitioner's Counsel noted that pay was withheld, because that's not anywhere in the record. If she were actually suspended, then yes, she would be entitled to due process. And the proposed suspension that she alleged to the board would have been part of that due process. Well, what are we to make of paragraph 4 of the letter? Was that an illusory promise that gave her 30 days to respond? That tracks 7513. Yes, because that promise is part of the 7513 guarantee that actions falling within 7512 are given certain procedural protections. So she was given 30 days to respond. And then apparently at some point after she responded, which I believe based on the record is long after 30 days, they may have withheld her pay. Again, I'm not clear on that. This is the first I've heard of this. But then restored her pay afterward. Either way, though, she was given an opportunity to respond. She was given 30 days. She was given notice of a proposed action that fell within 7512. And then she was given 30 days to respond, all of which accords with 7513. So had this fallen or had this been brought through a Chapter 75 appeal, it seems like due process would have been satisfied. Petitioner's counsel did also argue that what they contend is that she should have just been transferred like other people who faced similar issues. But this court held in Griffin v. Department of State that a transfer is also something the board cannot look at unless that right to transfer is guaranteed by statute. And the petitioner is not alleged that there was any statutory or regulatory or other rights that would afford her the ability to be transferred. And so without that, the board does not have jurisdiction to look at whether a transfer to some sort of nonsensitive position was appropriate. Remind me, counsel, what Egan said. Didn't Egan make reference to the reviewability of transfers? I can't recall if Egan makes specific reference. Oh, yeah, I take that back. I'm sorry. Egan does say that you can look at whether or not a transfer is feasible. But Griffin was issued by this court after Egan and said that Egan, that statement was not interpreted to mean that the right to transfer is automatic and that it still needs to be guaranteed by some sort of law or rule or regulation. If this court has no further questions, then we ask that you affirm the decision of the board dismissing for lack of jurisdiction. Thank you. Thank you. Mr. Solomon, you've got how much time do we have on rebuttal, Elise? There are three minutes and 37 seconds. Okay. You've got time for rebuttal. Mr. Solomon, please proceed. I would start out just by differentiating kind of what we have here from what's going on in GLSEN in that this map was already placed into nonsensitive duties. Then following an additional memorandum that, once again, did not make any sort of determination on security clearance, it was recommended that disciplinary action be looked into based on the conduct. So this was something that was saying that, yes, it acknowledged that her security clearance was already in a state of suspension and recommended that continue, but that disciplinary action be looked into based on the specific conduct of, you know, involving things that weren't actually directly related to her security clearance, including that, you know, she initially was reluctant to go to the training. Well, Mr. Solomon, can I just ask a clarification? I know your client listed a series of personnel actions that she was subjected to, and is the failure to transfer among those? It's wrapped up with the indefinite suspension where, you know, it's the fact that she was placed in, you know, with the indefinite suspension, she was placed in non-duty status without having an opportunity to actually get a decision on the indefinite suspension to determine if that was appropriate. So one of the big due process issues here is the agency transferred her at the beginning of the indefinite suspension, or not transferred her, but stopped her or reassigned her to administrative leave at the beginning of the indefinite suspension when she had been performing non-classified, non-sensitive work and normally should be entitled to, and the procedures require, you know, the agency decide on a proposed disciplinary action, but by just never deciding on it, she never actually got a response and was forced to stay in that non-duty status for the entire time until the proposed suspension was withdrawn and replaced with the proposed removal, which then continued the administrative leave as part of that, but she actually did get a response onto that, so there wasn't the same due process consideration. But by simply refusing to actually issue a decision on the proposed indefinite suspension, they were able to keep her in that non-duty status without actually giving an official decision on the suspension, which is part of the reason we're saying her due process rights were violated. But just regarding her position as far as the work she was performing, yes, there was no statutory entitlement to another position, but even within her unit, much of her work was actually already with victims and other non-sensitive units, and her duties could have easily been performed even without moving her just by assigning her specific individuals that were from non-classified units, and that was something that could have easily been accommodated by the command but was ignored specifically because she was a whistleblower and because she continued to make disclosures to Congress and to EEO, and had she not done that, she would have been allowed to remain in her non-classified duty status, and yes, the official reason placed on the proposed adverse action did state that it was based on a revocation or suspension of a security clearance. However, we're arguing that that wasn't actually the case at all, so we're not challenging the underlying determination, but the actual justification for the proposed adverse action. Thank you. Thank you. We thank both sides. The case is submitted, and that concludes our proceeding for this morning. Thank you, Elise. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.